**IRVING LUMBER COMPANY, Petitioner,**

v.

**ALLTEX MORTGAGE COMPANY, Inc., Respondent.**

No. B-1814.

Supreme Court of Texas.

May, 12, 1971.

Dissenting Opinion May 19, 1971.

Rehearing Denied June 9, 1971.

Coke & Coke, Eldon L. Youngblood, Dallas, for petitioner.

Carrington, Coleman, Sloman, Johnson & Blumenthal, James E. Coleman, Jr., and Gene L. McCoy, Dallas, for respondent.

REAVLEY, Justice.

We grant the motion for rehearing filed by Alltex Mortgage Company, set aside our former judgment, withdraw our opinion of February 3, 1971 and affirm the

judgment of the court of civil appeals with the following opinion.

Irving Lumber Company has held a mechanic's and materialman's lien on land against which Alltex Mortgage Company also held a vendor and deed of trust lien. Judgment in the cause turns on the effect upon the mechanic's and materialman's lien of foreclosure and sale pursuant to the power in the deed of trust. The trial court directed a verdict in favor of Alltex and rendered judgment that Irving take nothing against Alltex. The court of civil appeals affirmed that judgment. 446 S.W.2d 64.

Merit Homes, Inc. acquired title to several residential lots on July 8, 1964. At this time Merit Homes borrowed from Alltex a large sum of money which included $10,600 used in payment for the land. Alltex obtained on this occasion a note in the total amount of $137,850 and the deed of trust which secured its payment. Merit Homes subsequently defaulted in its payments on the note. The deed of trust was foreclosed according to its terms, and the parcels of land were duly sold. Alltex was the purchaser for the amount of $27,000. Alltex has subsequently sold these lots to other purchasers.

The present suit was brought by Irving against Merit Homes and Alltex. Irving pleaded and proved that it furnished labor and materials toward the construction of houses on the land and that it was owed a total amount of $13,967.50 by Merit Homes. Merit Homes took no appeal from a default judgment against it. The feature of the case before us grows out of the complaint against Alltex by which Irving contended that its mechanic's lien was not affected by the foreclosure and sale under the deed of trust. Its prayer for relief was "that the Court declare Plaintiff's lien prior and superior to any other liens or claims in and upon said property and that Plaintiff is entitled to foreclose its lien * * *" To avoid the joinder of the vendees of the four lots, Irving and Alltex stipulated that Alltex would pay to the other a money judgment in the total amount of any lien "which the Court deems would be entitled to foreclosure" against "any of the four (4) lots of land."

Irving contends that it had an oral contract with Merit Homes to furnish this labor and material for certain construction on these particular tracts by an agreement made prior to the date (July 8) when Merit Homes first acquired its interest in the lots and executed the deed of trust to Alltex. No delivery of materials was made or actual construction begun on the land by Irving until after this July 8 date. If the deed of trust, executed contemporaneously with the vesting of title in Merit Homes and securing the repayment of money advanced in part for the purchase price of the lots, was effective to the full extent of its power of sale whereby the sale thereunder cut off Irving's mechanic's lien, Irving is entitled to no relief and the lower court judgment is correct.

Irving's argument seems to be that, whereas its lien did not take priority over the purchase money lien held by Alltex, its lien did survive the private foreclosure and sale provided by the deed of trust. The precedent for this contention is said to be Herbert v. Denman, 44 S.W.2d 441 (Tex. Civ.App.1931, writ ref'd). In that case there were two vendor lien notes, one for $15,000 and one for $2500. The larger note constituted a first lien; when it was renewed, the maker was required to execute a deed of trust to further secure its payment. The court merely held that sale by the trustee under the power created subsequent to the $2500 vendor's lien and note did not cut off that junior lien. This case does not justify a separation and assignment of different priorities between a vendor's lien and the lienholder's rights under a deed of trust where they come into being by the same instrument and transaction at the moment when the debtor-purchaser first acquires his title to the land.

A fact situation similar to ours existed in National Western Life Insurance Com-

pany v. Acreman where the court of civil appeals held (415 S.W.2d 265) that the holder of the vendor's lien and deed of trust lien (insurance company) enjoyed priority over the holder of the mechanic's and materialman's lien (Acreman). Acreman had actually commenced his work on the land a week prior to the date that Fuller, the owner with whom he had contracted, had purchased the land from Sisk and executed the deed of trust to the insurance company. The court said:

> "The lien created by the deed of trust is impressed by the character of the indebtedness for which it was given to secure. This is the general rule in this state as well as elsewhere. The deed of trust was given to secure the payment of purchase money delivered to Sisk and the deed of trust lien has the status of a purchase money lien, as well as a deed of trust. The insurance company was the purchaser at the sale regularly made in the exercise of a power of sale authorized by the duly recorded mortgage and deed of trust, taking the title of Fuller divested of all incumbrances made subsequent to the execution, delivery and record of such mortgage." 415 S.W.2d 265, 269.

The holder of the mechanic's lien did not apply for writ of error in the Supreme Court, and when the case was considered here there was no complaint of the holding as to the priority of these liens. The court assumed that the insurance company's lien was prior and superior. With that established, this court held: "When National Western's lien was foreclosed, the purchaser at the trustee's sale acquired title to the property freed of the claims of Acreman." National Western Life Insurance Company v. Acreman, 425 S.W.2d 815, 817 (Tex.Sup. 1968).

In McCallen v. Mogul Producing & Refining Co., 257 S.W. 918 (Tex.Civ.App. 1923, dism'd w. o. j.), the holder of the mechanic's lien commenced work on the land prior to the execution of two deeds of trust. One of these deeds of trust secured the payment of the purchase price and the other one was executed by Crescent Association prior to taking title to the land but to secure a collateral loan. The court held that the mechanic's lien could not antedate the ownership of the party (Crescent) with whom the lienholder contracted. The liens of both deeds of trust were held to be prior to the mechanic's lien, and the foreclosure and sale by the trustees to Mogul cut off the junior lien.

■ There is no cause to question the authority of those Texas cases which have held that a lien may be subsequently perfected even though at the time the contract for the construction is made, the purchaser is not then the "owner" of the land. Enlow v. Brown, 357 S.W.2d 608 (Tex.Civ. App.1962, no writ); Breckenridge City Club v. Hardin, 253 S.W. 873 (Tex.Civ. App.1923, no writ). However, the priority of a security interest is not determined on the date of the "inception" of an agreement between the contractor and a *prospective* owner.

If Irving had held a judgment lien against Merit Homes instead of an oral contract which could prove to be the "inception" of a mechanic's lien, and even though Irving had filed the abstract of judgment on the public record long before Merit Homes acquired its ownership of the land, the lien would not take priority over the deed of trust given to secure payment of purchase money and executed contemporaneously with the vesting of title in the judgment debtor. It has been held that the lien of the judgment attaches only to the interest which the judgment debtor acquires, and the debtor's title is burdened by the lien of the deed of trust. Masterson v. Burnett, 27 Tex.Civ.App. 370, 66 S.W. 90 (1901, error ref'd).

■ The title of these lots passed to Merit Homes burdened by the deed of trust and security interest of Alltex in the same manner as if a prior owner had conveyed a partial interest before Merit Homes acquired its ownership in the lots. At least to the extent of the purchase mon-

ey advanced, a superior title was held by Alltex. That superior title was secured by the deed of trust, and foreclosure and sale thereunder was effective to cut off any inferior lien on the land. Whether Irving was then entitled to pursue a portion of the proceeds of the sale in the hands of Alltex is not raised in this case, because the only issue is whether Irving was entitled to foreclose its lien on the land following the foreclosure under the deed of trust.

We grant respondent's motion for rehearing, set aside our former judgment and affirm the judgment of the court of civil appeals.

Dissenting opinion by McGEE, J., in which DENTON and DANIEL, JJ., join.

McGEE, Justice (dissenting).

I respectfully dissent.

Article 5459, Vernon's Annotated Civil Statutes, dealing with mechanics' and materialmen's liens provides:

"The lien * * * shall attach to the house, building, improvements * * * for which they were furnished or the work was done in preference to any prior lien or encumbrance or mortgage upon the land upon which the houses, buildings, or improvements * * * have been put, or later performed, and the person enforcing same may have such house, building or improvements * * * sold separately, provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby. * * * "

In Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652 (1896), we held that the date of the contract establishes the time of inception of the mechanics' and materialmen's lien. The dates of Irving's contracts were all prior in time to the July 8 date of execution of the deed of trust which was foreclosed by Alltex.

Funds received from the trustee's sale of the four lots together with the improvements thereon were in excess of the total amount of the vendor's liens and mechanics' and materialmen's liens. I think the pleadings and stipulations are broad enough to permit Irving to "pursue a portion of the proceeds of the sale in the hands of Alltex." Had Alltex foreclosed its vendor's liens, it would have been entitled to retain only the funds necessary to satisfy the amounts due under the vendor's liens. Irving would have been entitled to receive the excess to satisfy its liens.

In effect, the majority is holding that Irving, by agreeing not to sue the ultimate purchasers of the lots upon the agreement of Alltex to pay any amount shown to be due, has waived its claim to funds received at the foreclosure sale in excess of the amount due under the vendor's liens. The majority is failing to distinguish between a vendor's lien foreclosure and a foreclosure under a deed of trust having its inception subsequent to that of the mechanics' lien. It also fails to distinguish between vendor's liens on the lots and mechanics' and materialmen's liens on the improvements.

All of the contracts between Irving and Merit Homes for improvements on the seven lots had their inception prior to the execution of the deed of trust on July 8 by Merit Homes in favor of Alltex. Presumably, work was commenced on the three lots, prior to July 8, and for this reason, Alltex paid for the Irving improvements on these three lots. Though it was stipulated that no work or materials was furnished by Irving on these four lots prior to July 8, it is obvious that Alltex had actual notice of some type of contract between Merit Homes and Irving Lumber prior to the making of its loan on July 8. Alltex had seen the plans and specifications for these improvements prior to the making of any loan; otherwise, it would not have known whether a loan in the sum of $137,850.00 was justified. Whether Alltex

knew of the oral contracts between Merit Homes and Irving Lumber is immaterial. All of the plans and specifications were known to Alltex. Alltex also knew that someone would do the work through Stage II of the F.H.A. specifications and would seek payment therefor. It accepted and approved all of the work, sold the improvements at a profit, and now will receive a bonus of approximately $14,000 as a result of this Court's decision.

In my opinion, the majority is mistaken in relying on National Western Life Insurance Co. v. Acreman, 415 S.W.2d 265 (Tex.Civ.App.—1967), aff'd in part and modified in part, Acreman v. National Western Life Insurance Co., 425 S.W.2d 815 (Tex.Sup.1968). In that case *all* of the money advanced was to be applied to the *purchase price* of the land alone. This fact is recited in the deed from Sisk to Fuller. The court there said:

"The lien created by the deed of trust is impressed by the character of the indebtedness for which is was given to secure. * * * The deed of trust was given to secure the payment of *purchase money* delivered to Sisk and the deed of trust lien has the status of a purchase money lien, as well as a deed of trust. The insurance company was the purchaser at the sale regularly made in the exercise of a power of sale authorized by the duly recorded mortgage and deed of trust, taking the title of Fuller divested of all incumbrances made *subsequent to the execution*, delivery and record of such mortgage." 415 S.W.2d at 269. (Emphasis added.)

As noted in the majority opinion, the holder of the mechanics' lien did not apply for writ of error. It should be noted that this Court said in *Acreman*:

"We also assume that at the time of its inception National Western's lien was prior and superior to Acreman's lien since no complaint is made by Acreman of that holding." 425 S.W.2d at 817.

The reason Acreman did not appeal probably lies in the fact that the record in the court of civil appeals revealed "no evidence that due notice was given by Acreman to Fuller as so required."

The appellant had contended that Acreman had no valid mechanics' and materialmen's lien pursuant to Article 5452. Acreman neither alleged nor proved that two copies of the affidavit claiming the lien were sent to Fuller, the owner of the land as of the 3rd day of April, 1964. Said notice is required by Article 5453 of Vernon's Annotated Civil Statutes. All of the proof shows that Acreman's contract to build the road was with Statewide Properties, Inc., and not appellant Fuller. It would appear that Acreman failed to prove *any* lien under the record in that case. We merely have the assumption of fact made by the Supreme Court that "at the time of inception National Western's lien was prior and superior to Acreman's lien." That being so, the *Acreman* case is no authority for the majority opinion in this case insofar as priorities are concerned.

I submit that McCallen v. Mogul Producing & Refining Co., 257 S.W. 919 (Tex.Civ.App.—1923, writ dism'd w. o. j.), relied on by the majority is not controlling, or even helpful in this case. All of the liens held to be prior to the alleged mechanics' liens were purchase money vendor's liens. The evidence failed to show any identification of the materials furnished; thus no mechanics' and materialmen's lien was established.

Texas cases have held that a mechanics' and materialmen's contract made before the "owner" has acquired title creates a mechanics' and materialmen's lien if title is acquired later. Breckenridge City Club v. Hardin, 253 S.W. 873 (Tex.Civ.App.—1923, no writ); Schultze v. Alamo Ice & Brewing Co., 2 Tex.Civ.App. 236, 21 S.W. 160 (1893, no writ). See Annot., 52 A.L.R. 693 (1928). The mechanics' and materialmen's lien statutes should be liberally construed with a view to effect their ob-

jects and promote justice. As stated in the *Hardin* case, supra:

> "There can be no reasonable contention that the purchase of the lots was not in contemplation at the time of the order of the material, and in equity, * * * the final acquisition of title related back and existed at the time of the contract for the purchase of the material." 253 S.W. at 875.

Other decisions so holding are Sprowles v. Youngblood, 23 S.W.2d 879 (Tex.Civ.App. —1929) rev'd on other grounds *sub nom* Harveson v. Youngblood, 38 S.W.2d 781 (Tex.Comm.App.1931, jdgmt. approved); Enlow v. Brown, 357 S.W.2d 608 (Tex. Civ.App.—1962, no writ). Though recognizing the authority of Texas cases holding "that a lien may be subsequently perfected even though at the time the contract for the construction is made, the purchaser is not the 'owner' of the land," the majority does not apply this well-established doctrine in this case.

Without citing any authority in point, the majority opinion states, " * * * the priority of a security interest is not determined on the date of 'inception' of an agreement between the contractor and a *prospective* owner." The only case even remotely in point is Masterson v. Burnett, 27 Tex.Civ.App. 370, 66 S.W. 90 (Tex. Civ.App.—1901, error ref'd). In that case the loan on the one hand and the deed of trust executed on the same date as the deed were a part of the consideration for the exchange of properties acquired by the judgment debtor. The abstract of judgment was filed before the acquisition of ownership by the judgment debtor. The court there said:

> "Thus a *vendor's lien* will prevail over a judgment lien prior in date, and this though, in the nature of things, the instrument evidencing the facts creating the vendor's lien could not possibly be placed of record prior to the attaching of the judgment lien." 66 S.W. at 93.

In interpreting this decision, the majority has incorrectly substituted "lien of the deed of trust" for the words "vendor's lien." The Court writes, "The lien of the judgment attaches only to the interest which the judgment debtor acquires, and that title is burdened by the *lien of the deed of trust*." I would agree with that conclusion only if the amount of the vendor's lien and the amount of the note secured by the deed of trust are the same.

While conceding that the money advanced to pay the vendor's liens on the lots would entitle the lender to be subrogated to the rights of the vendor in effecting collection of $10,600, creating a lien superior to all others, it does not follow that the balance of the loan secured by the deed of trust would be entitled to the same priority.

I think that the *Acreman* case held that a deed of trust given to secure the payment of purchase money for land, by way of subrogation to the vendor's lien, gives priority over mechanics' and materialmen's liens. Irving recognized this legal principle and conceded that the vendor's liens of Alltex were entitled to priority over Irving's mechanics' and materialmen's liens.

The effect of the holding of the majority, however, is that sums for construction purposes in addition to sums for purchase money may, by being rolled together in the same deed of trust given to protect purchase money loans, acquire the priority of a vendor's lien.

I submit that the majority opinion is erroneous and without the support of any sound authorities. I think the rule applicable here is properly stated by this Court in W. C. Belcher Land & Mortgage Co. v. Taylor, 212 S.W. 647 (Tex.Comm.App.— 1919, jdgmt. adopted):

> "The rule is familiar and well settled that one paying on behalf of another the price of land or a part thereof, a lien existing in favor of the vendor, is entitled to be subrogated thereto, where the pay-

ment is made under agreement with the vendee and upon an understanding express [deed of trust] or implied, that the lien shall be retained as security for the money advanced; and where the amount advanced is in excess of that secured by the vendor's lien, the party is subrogated *to the extent of the amount of the lien."* 212 S.W. at 649. (Emphasis added.)

I would overrule the motion for rehearing and sustain our prior opinion appearing 14 Tex.Sup.Ct.J. 212 (February 3, 1971).

Associate Justices DENTON and DANIEL join in this dissent.